UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

THE HUMANE SOCIETY OF THE UNITED STATES
2100 L STREET NW
WASHINGTON, D.C. 20037

PLAINTIFF

V.

CASE NO.

UNITED STATES DEPARTMENT OF AGRICULTURE
1400 INDEPENDENCE AVE. SW
WASHINGTON, D.C. 20250

DEFENDANT

COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF

1. This is an action under the Freedom of Information Act ("FOIA"), 5 U.S.C. § 552 *et seq.*, as amended, to obtain access to records in the possession of the United States Department of Agriculture ("USDA" or "Defendant") pertaining to USDA's withholding of information included on license renewal application forms submitted by individuals licensed as animal dealers under the Animal Welfare Act ("AWA"), 7 U.S.C. § 2131 *et seq.* This action challenges the unlawful application of FOIA Exemption 4 and FOIA Exemption 6 to information regarding the annual number of dogs bought and sold by licensees and gross dollar amount received from regulated activities.

## JURISDICTION

2. The Court has jurisdiction over this action pursuant to 5 U.S.C. § 552(a)(4)(B) and 28 U.S.C. § 1331.

## PARTIES

3. Plaintiff The Humane Society of the United States ("HSUS") is a non-profit animal protection organization, headquartered in Washington, D.C., with over eleven million members and constituents nationwide. Since its establishment in 1954, The HSUS has worked to combat animal abuse and exploitation and promote animal welfare. The HSUS is the requestor of the public records at issue in this action.

4. The HSUS actively advocates against operations engaged in large-scale dog breeding without regard to animal health or welfare ("puppy mills"). The HSUS also closely monitors USDA efforts to implement and enforce the AWA, including the licensing and regulation of animal dealers. The HSUS provides its members and the public with information on a wide spectrum of animal issues, including puppy mills, and it is essential that the HSUS is able to access public records available through FOIA requests to government agencies.

5. Defendant USDA is an agency of the United States government, and is responsible for the implementation of the Animal Welfare Act. Defendant USDA has possession and control of the records the HSUS requested.

## STATUTORY FRAMEWORK

### *The Freedom of Information Act*

6. The FOIA requires agencies of the federal government, upon request, to release information to the public, unless the agency demonstrates that one of nine specific statutory exemptions applies. 5 U.S.C. § 552(a), (b).

7. Exemption 4 of the FOIA allows an agency to withhold "trade secrets and commercial or financial information obtained from a person and privileged or confidential." 5 U.S.C. § 552(b)(4).

8. Exemption 6 of the FOIA allows an agency to withhold "personnel and medical files and similar files the disclosure of which would constitute a clearly unwarranted invasion of personal privacy." 5 U.S.C. § 552(b)(6).

9. Upon receiving a FOIA request, an agency has twenty (20) working days to respond to the request. 5 U.S.C. § 552(a)(6)(A)(i). A requestor may file an administrative appeal of an agency's failure to disclose requested records. *Id.* at § 552(a)(6)(A)(ii). An agency must make a determination on any such appeal within twenty (20) working days. *Id.* However, a requestor is deemed to have exhausted its administrative remedies, and may seek immediate judicial review of the matter, if the agency fails to comply with either of these time limits. *Id.* at § 552(a)(6)(C).

*The Animal Welfare Act*

10. Congress enacted the AWA "to insure that animals intended for use . . . as pets are provided humane care and treatment" and found that "it is essential to regulate . . . purchase, sale, housing, care, handling, and treatment of animals . . . by persons or organizations engaged in . . . holding them for sale as pets . . ." 7 U.S.C. § 2131.

11. The AWA requires the Secretary of Agriculture to "issue licenses to dealers . . . upon application therefor in such form and manner as he may prescribe and upon payment of such fee established pursuant to 2153 of this title." *Id.* at § 2133.

12. The AWA defines a "dealer" as "any person who, in commerce, for compensation or profit, delivers for transportation . . . buys, sells, or negotiates the purchase or sale of (1) any dog . . . [for] use as a pet, or (2) any dog for hunting, security, or breeding purposes, except that this term does not include – (i) a retail pet store . . . or (ii) any person who does not sell, or negotiate the purchase or sale of any . . . dog . . . and who derives no more than $500 gross income from the sale of other animals during any calendar year." *Id.* at § 2132(f).

13. The USDA has issued regulations for the issuance of licenses, including two classes for "dealers." 9 C.F.R. Part 2, Subpart A. A Class A licensee is "a person . . . whose business involving animals consists only of animals that are

bred and raised on the premises in a closed or stable colony and those animals acquired for the sole purpose of maintaining or enhancing the breeding colony." Id. at § 1.1. A Class B licensee is "a person . . . whose business includes the purchase and/or resale of any animal. . . . Such individuals do not usually take actual physical possession or control of the animals, and do not usually hold animals in any facilities." Id.

14. USDA licenses issued under the AWA are valid for one year, and "any person who is licensed must file an application for a license renewal . . . and pay the required annual license fee." 9 C.F.R. § 2.5(b).

15. Annual license fees are determined as follows: "The annual license renewal fee for a Class 'A' dealer shall be based on 50 percent of the total gross amount, expressed in dollars, derived from the sale of animals . . . during his or her preceding business year . . ." 9 C.F.R. § 2.6(b)(1). "The annual license renewal fee for a Class 'B' dealer shall be established by calculating the total amount received from the sale of animals . . . during the preceding business year . . . less the amount paid for the animals by the dealer or applicant." Id. at § 2.6(b)(2). Once USDA has determined these base amounts, it applies a sliding scale of fees (*e.g.*, if 50 percent of a Class A dealer's total gross amount derived from sales is between $10,001-$25,000, that dealer will pay a $235 license renewal fee). 9 C.F.R. § 2.6(c).

16. APHIS Form 7003 is the annual application for license renewal, which requires dealers to fill out, among other things, Block #8 Line A ("Total No. of Animals Purchased in the Last Business Year"), Line B ("Total No. of Animals Sold in the Last Business Year"), Line C ("Total Gross Dollar Amount Derived From Regulated Activities"), and Line D ("Dollar Amount on Which Fee is Based"). [This information appears in Block #10 on one version of the license renewal application form.] Class A licensees are directed to insert one half the amount of Line C on Line D; Class B licensees are directed to insert on Line D the amount in Line C less the amount paid for the animals. The gross amounts that the dealer derives from the regulated activities determines the license fee the dealer pays and, along with the numbers of animals bought and sold, provides essential information about the scope of the licensee's activities. Thus, USDA relies on these numbers to assess the level of inspection and enforcement resources to apply to particular AWA licensees.

FACTS GIVING RISE TO PLAINTIFF'S CAUSE OF ACTION

17. Plaintiff submitted three FOIA requests to USDA to release various dealer license renewal applications to determine the scale of various dog breeding operations and to evaluate USDA's implementation of the AWA. In particular, HSUS requested license renewal applications for thirty-three licensed dealers in multiple states and for all licensed dealers in the state of Missouri. In a series of responses to each request, USDA redacted

information on Form 7003 Block #8 (or #10), citing either Exemption 4 or Exemption 6, without explaining why it was applying two different exemptions.

18. The first FOIA request at issue is #09-1143. On August 20, 2009, HSUS submitted a request to USDA for "copies of license renewal applications (APHIS Form 7003) submitted by the following dealers, as required under 9 C.F.R. 2.7, for 2009 and 2008: Judy Scearcy/Mystic Rock Kennels, 42-A-1310; Gary Felts, Black Diamond Kennel, 42-A-0757; Brandi Cheney, S&S Family Puppies, 43-B-0435; Mary Ann and Billy Smith, 43-A-2296; Carol Slovacek, 48-A-2045; Betty Porter, 42-A-1256; Dennis R & Kathy Eilenstine, Eilenstine Kennel, 48-A-1694; Louise Clapp, 43-A-0893; Barbara Crick, Crick's Kennels, 47-A-0426; Ervin Raber, Golden View Kennels, 31-A-0124."

19. On April 8, 2010, USDA sent HSUS a partial response to request 09-1143, releasing twelve pages of responsive documents. On each license renewal application form, USDA redacted Block #8 (or #10) Lines A-D, citing FOIA Exemption 6.

20. On April 12, 2010, USDA sent HSUS a final response to 09-1143, releasing three additional pages of responsive documents. On each license renewal application form, USDA again redacted Block #8 (or #10) Lines A-D, citing FOIA Exemption 6.

21. The second FOIA at issue is #10-007. On October 5, 2009, HSUS submitted a request to USDA for "copies of all records related to license renewal applications (APHIS Form 7003), including but not limited to the actual renewal applications, submitted by the following dealers pursuant to 9 C.F.R. § 2.7, for 2009 and 2008: Karen Brunkhorst, Critter Ridge Kennel, 43-A-3351; Kimberly Coleman, TLC's Kennel, 43-A-4973; Ann Conners-McWilliams, 43-B-3500; Robert Dukes and Robin Dollens, Tiny Tails, 43-A-4542; Beverly Fields, B&B Kennel, 43-A-1235; Paul and Pollie Gingerich, 43-A-3766; Harold and Jean Hartly, 43-A-1655; Hunte Corporation, 43-B-0123; Tim King, Jr., Doo Little Kennel, 43-A-4499; Bob and Shirley Lager, 43-A-3632; David Lasiter, Show Me Puppies, 43-B-3545; Barbara McCoy, Gone to the Dogs, 43-A-2807; Diana Miller, 43-A-4989; Sharon Owen, Poodles Plus, 43-B-0398; Kathy Payne, Jazz-A-Paw Kennel, 43-A-3420; Amanda Periman, 43-A-5259; Janice Peterson, 43-A-4851; Charletta Pickering, Hob Nob Kennels, 43-A-4736; Stacey Pitts, 43-A-3480; Shannon Plymell, Windsong Kennel, 43-A-4928; Diane Swearingen, S&D Kennel, 43-A-1747; Jerri Vestal, 43-A-4931; and Terri Wilson, Whistlin' W Kennel, 43-A-3909."

22. On January 8, 2010, USDA sent HSUS a final response to request #10-007, releasing sixty-six pages of responsive documents. On each license renewal application form, USDA redacted Block #8 (or #10) Lines A-C, citing FOIA Exemption 4 on thirteen occasions and citing FOIA Exemption 6 on four occasions, for precisely the same type of information.

23. The third FOIA request at issue is #10-149. On December 15, 2009, HSUS submitted a request to USDA for "copies of all applications for license and annual reports (APHIS Form 7003) pursuant to 9 C.F.R. § 2.7, submitted by all dog breeders and dealers in the State of Missouri for the most recent year available."

24. On March 2, 2010, USDA sent HSUS a partial response to request #10-149, including 200 pages of license renewal applications. On each form, USDA redacted Lines A-D on Block #8 (or #10), citing Exemption 6 all but seven times, in which cases the agency cited Exemption 4.

25. On March 25, 2010, HSUS submitted an administrative appeal to USDA related to FOIA #10-007 and FOIA #10-149, objecting to the agency's application of Exemption 4 and Exemption 6. HSUS argued that Exemption 4 does not apply to the dealers' gross dollar amount or bought and sold numbers as disclosure of the information would not impact the likelihood that the government would be able to obtain this information in the future since The USDA requires licensees to submit this information as a condition of license renewal. Further, HSUS argued that disclosure of this information would not cause substantial harm to the competitive position of the licensed dealer, as the information is too limited to enable competitors to successfully undermine the dealer. HSUS also argued that Exemption 6 does not apply to the gross dollar amount or bought and sold numbers, as the release of such

information would not cause an unwarranted invasion of the intimate details of personal privacy.

26. On April 6, 2010, a representative of USDA contacted HSUS by phone and indicated that the agency had made a mistake in its response to #10-007 and that the agency intended to withhold information in Block #8 (or #10) on each form pursuant to Exemption 6, and not Exemption 4. The agency representative also stated that the agency had mistakenly released the wrong set of documents responsive to request #10-149.

27. On April 7, 2010, USDA sent HSUS a "subsequent response" to FOIA #10-007 that included the same license renewal application forms released on January 8, 2010, but redacted Block #8 (or #10) Lines A-D, citing FOIA Exemption 6.

28. On April 8, 2010, USDA sent HSUS a "subsequent partial response" to FOIA #10-149 that included 271 pages of responsive documents. On each license renewal application USDA redacted Lines A-D on Block #8 (or #10), citing Exemption 6 all but five times, in which cases the agency cited Exemption 4.

29. On April 20, 2010, USDA sent HSUS a third partial response to request #10-149, indicating that on April 19, 2010 the agency sent HSUS a second partial response; however, no such information was ever received by HSUS. The April 20th response did include 331 pages of license renewal applications, and

on each form USDA redacted Lines A-D in Block #8 (or # 10) based on Exemption 6.

30. On May 6, 2010, HSUS submitted an administrative appeal to USDA, arguing that neither Exemption 4 nor Exemption 6 apply to the redacted information in FOIA requests #10-007, #10-149, and #09-1143, and so the information must be released. HSUS argued that Exemption 4 does not apply to the gross dollar amount or bought and sold information because such information is not privileged or confidential, and disclosure would not result in a likelihood of substantial competitive injury to the dealers. HSUS also argued that Exemption 6 does not apply to the gross dollar amount or bought and sold information, as it they are not the type of intimate details or personalized financial information that Exemption 6 was designed to protect. Further, HSUS argued that Exemption 6 does not apply to the information because the public interest in disclosure of that information clearly outweighs whatever privacy interest may exist, as the information is essential for monitoring the scope of regulated activities and assessing USDA's enforcement of the AWA. According to a United States Postal Service certified mail delivery confirmation, USDA received the appeal on May 10, 2010.

31. On May 14, 2010, USDA's Office of Inspector General issued a report evaluating the USDA Animal Care Program's Inspections of Problematic Dealers (Audit Report 33002-4-SF, "OIG Report"). The OIG Report

specifically focused on large-scale dog breeders and dealers because of increased awareness that there are systemic problems with severe inhumane treatment of animals in these "puppy mills." The OIG Report highlighted "major deficiencies" with USDA's administration of the AWA regarding these facilities, finding that USDA's "enforcement process was ineffective in achieving dealer compliance with AWA and regulations." One reason for the program's failure is that "inspectors did not cite or document repeat violations properly to support enforcement actions." Further, USDA's focus on education and cooperation with the licensees "have not always been successful in deterring problematic dealers from violating AWA." The report provided specific recommendations for USDA to improve enforcement of the AWA to ensure that dog breeders and dealers are in compliance with the AWA. The government failures highlighted by the OIG Report make the Plaintiff's FOIA requests all the more relevant, as the public has a right to know the scope of these dog breeder and dealer businesses in order to closely monitor the USDA's implementation of the AWA.

PLAINTIFF'S CLAIM FOR RELIEF

32. Plaintiff has a statutory right of access to the records requested under the FOIA, 5 U.S.C. 552(a)(3), and there is no lawful basis for Defendant's withholding of the requested records under either Exemption 4 or Exemption 6. Further, USDA has not adequately explained why it is applying two

different FOIA Exemptions to the same information in the requested forms. Therefore, USDA has violated the FOIA and Plaintiff is entitled to relief.

Wherefore, Plaintiff requests that this honorable Court:

(1) Declare that Defendant's withholding of the requested records is unlawful;

(2) Order Defendant USDA to make the requested records available to Plaintiff within ten (10) working days'

(3) Award Plaintiff its costs and reasonable attorneys' fees in this action;

(4) Declare that the circumstances surrounding Defendant's withholding of records raise questions whether the agency personnel have acted arbitrarily or capriciously with respect to Plaintiff's request for records, and refer the matter to the Merit System Protection Board for investigation pursuant to the Civil Service Reform Act of 1978, 5 U.S.C. 1216(a)(3);

(5) Grant such other and further relief as the Court may deem just and proper.

Respectfully Submitted,

October 4, 2010

*[signature]*

Anna Frostic (D.C. Bar No. 977732)
The Humane Society of the United States
2100 L Street NW
Washington, D.C. 20037
Phone (202) 676-2333; Fax (202) 676-2357

*Attorney for Plaintiff*